UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

NASIR MANZOOR,

       Plaintiff,

   v.                                     ACTION NO. 2:06cv455

MICHAEL CHERTOFF, Secretary of the
Department of Homeland Security,
EMILIO GONZALEZ, Director of
U.S. Citizenship and Immigration Services,
PHYLLIS HOWARD, District Director,
U.S. Citizenship and Immigration Services, and
ROBERT S. MUELLER, Director of
the Federal Bureau of Investigations,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Nasir Manzoor ("Manzoor") filed this civil action seeking to expedite the adjudication of his naturalization application.  The matter is before the court on Defendants' motion to dismiss.  For the reasons set forth herein, Defendants' motion to dismiss is **DENIED**, and this matter is **REMANDED** to the United States Bureau of Citizenship and Immigration Services ("CIS").

## I.  Factual and Procedural History

Manzoor, a lawful permanent resident of the United States, filed an application for naturalization with the Nebraska Service Center of CIS on August 25, 2003.  On September 2, 2003, CIS sent a request for a name check, one of three mandatory background checks that must be completed before an application for naturalization is granted, to the Federal Bureau of Investigation

("FBI").   On February 4, 2004, Manzoor, who then resided in Wichita, Kansas, was interviewed by CIS concerning the application at its Kansas City district office.   At the interview, Manzoor passed tests of English and United States History and Government, but CIS was unable to make a decision on his application at that time because the three mandatory background checks had not been completed.

Approximately two years later, on or about February 10, 2006, Manzoor sent a letter to CIS requesting an update on the status of his application.   In a letter dated April 17, 2006, CIS informed Manzoor that it could not yet make a decision on his application because the three mandatory background checks had not been completed.   The letter also stated that Manzoor should contact CIS if no action was taken on his application within the next six months.

On August 11, 2006, Manzoor filed a petition for a hearing on his naturalization application pursuant to 8 U.S.C. § 1447(b). Manzoor, who is proceeding pro se, named the following defendants in his petition: Michael Chertoff, Secretary of the Department of Homeland Security; Emilio Gonzalez, Director of CIS; Phyllis Howard, District Director of CIS; and Robert S. Mueller, Director of the FBI (collectively, "Defendants").  Manzoor alleges that this court has jurisdiction to consider this matter pursuant to 8 U.S.C. § 1447(b), because CIS failed to adjudicate his naturalization

application within 120 days of the interview on February 4, 2004. Manzoor asks this court to enter an order adjudicating his naturalization application.  In the alternative, he asks this court to remand the matter to CIS and instruct the agency to make an immediate decision on his application.

Manzoor served each of the Defendants with process between August 21, 2006, and August 28, 2006.  Pursuant to Rule 4(i)(1) of the Federal Rules of Civil Procedure, Manzoor was also required to serve process on the Attorney General of the United States at Washington, D.C., and the United States Attorney for the Eastern District of Virginia, the district in which this action was brought.  See FED. R. CIV. P. 4(i)(1).  Manzoor served the Attorney General with process on August 22, 2006.  Manzoor, however, did not serve process on the United States Attorney for the Eastern District of Virginia until October 17, 2006.[1]

On November 17, 2006, the FBI completed the name check for Manzoor, and forwarded the results to CIS.  On December 18, 2006, Defendants filed the instant motion to dismiss, asking this court to dismiss this action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failing to state a claim upon which relief can be granted

---

[1]The delay was due to the fact that Manzoor initially served process on the United States Attorney for the District of Columbia, rather than the United States Attorney for the Eastern District of Virginia.

pursuant to Rule 12(b)(6).  In the alternative, Defendants ask the court to remand the matter to CIS so that it can make a decision on Manzoor's application once all of the mandatory background checks are completed.

Defendants' motion is accompanied by the declarations of Susan P. Dibbons, Assistant District Director in the Washington District Office of CIS ("Dibbons"), and Michael A. Cannon ("Cannon"), Section Chief of the National Name Check Program Section at the FBI Headquarters in Washington, D.C.  In her declaration, Dibbons explains that CIS cannot make a final decision on an application for naturalization until a background investigation of the applicant is completed.  She further explains that under the policy and practice of CIS, the following three background checks are required: (1) a "name check" conducted by the FBI; (2) a "fingerprint check" conducted by the FBI; and (3) an Interagency Border Inspection System ("IBIS") check.  She notes that the FBI has completed the name check for Manzoor, and the results were received by CIS on November 21, 2006.  It is not clear from her declaration, or any of the other submissions of Defendants, whether the fingerprint check and IBIS check have been completed.[2]

---

[2]Dibbons states in her declaration, which is dated December 15, 2006, that Manzoor's fingerprints would "expire" on December 23, 2006, and that he would have to make a new fingerprint appointment if CIS did not make a decision on his application prior to that date.  Information readily available to the public over the

In his declaration, Cannon explains that the FBI processed about 2.5 million name checks on an annual basis prior to the events of September 11, 2001.  By contrast, in fiscal year 2006, the FBI processed more than 3.4 million name checks.  Cannon notes that in December 2002 and January 2003, approximately 2.7 million name checks were resubmitted to the FBI by CIS, and that the processing of these additional submissions has delayed the processing of regular submissions from CIS.  Submissions are processed on a first-in, first-out basis unless CIS directs that a particular name check be expedited.

The court received Manzoor's response to Defendants' motion to dismiss on December 27, 2006.  Although Manzoor is proceeding pro se, his response is well-reasoned and contains extensive citations to legal authority.  The court received a rebuttal brief from Defendants on January 8, 2007.  The matter is now ripe for review.

## II.  Standard of Review

When a defendant raises a challenge to subject matter jurisdiction in a motion under Rule 12(b)(1), the burden of proving the factual basis for subject matter jurisdiction is on the plaintiff.  Richmond, Fredericksburg & Potomac R.R. v. United

---

Internet indicates that the results of a fingerprint check are typically available within two days and the results of the IBIS check are generally available immediately.  CIS must review the results of these tests, as well as the results of the name check, and CIS must sometimes conduct follow-up questioning of the naturalization applicant. See Understanding the Security Process, http://usinfo.state.gov/gi/Archive/2006/May/04-878088.html.

States, 945 F.2d 765, 768 (4th Cir. 1991). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. Also, Rule 12(b)(6) provides that a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A district court should not dismiss a complaint under Rule 12(b)(6) "unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir. 2005) (internal quotation omitted).

## III. Analysis

To resolve the issues raised by the parties, this court must determine the meaning of the term "examination" in 8 U.S.C. § 1447(b). Pursuant to § 1447(b), if CIS fails to make a decision on an application for naturalization "before the end of the 120-day period after the date on which the examination is conducted under [8 U.S.C. § 1446], the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter." 8 U.S.C. § 1447(b) (emphasis added).

Defendants argue that the term "examination" in § 1447(b)

6

refers to a process that includes the initial interview of an applicant by CIS and the mandatory background investigation of the applicant. Thus, in the view of Defendants, the 120-day time period does not begin to run until the initial interview of an applicant and the three mandatory background checks have been completed. Based on the fact that Manzoor filed his petition before the FBI completed the background checks, Defendants contend that this court lacks jurisdiction to consider his petition. For the same reason, Defendants argue that Manzoor has failed to state a claim upon which relief may be granted. Defendants note that this court previously adopted their interpretation of § 1447(b) in Danilov v. Aguirre, 370 F. Supp. 2d 441 (E.D. Va. 2005), and Martinez v. Gonzales, No. 2:06-378, 2006 WL 3477985 (E.D. Va. Nov. 29, 2006).[3]

Manzoor, in turn, argues that the term "examination" in § 1447(b) refers to the initial interview of a naturalization applicant by CIS. He thus contends that his "examination" was conducted, and the 120-day clock began to run, on February 4, 2004, the date of his initial interview. In his view, this court has jurisdiction to consider his petition because he filed it on August 11, 2006, more than 120 days after his initial interview on

---

[3]The court notes that in each of these cases, the naturalization applicant failed to file a response to the defendants' motion to dismiss for lack of subject matter jurisdiction. See Danilov, 370 F. Supp. 2d at 442; Martinez, 2006 WL 3477985, at *1.

February 4, 2004.  Manzoor notes that his interpretation of the term "examination" finds strong support in the administrative regulations promulgated by the Immigration and Naturalization Service ("INS"), CIS's predecessor,[4] and that district courts in other jurisdictions have found the reasoning of the Danilov court unpersuasive.

### A.

In determining the meaning of a statute, this court must look first to the statute's plain language.  Andrews v. United States, 441 F.3d 220, 222 (4th Cir. 2006).  In doing so, the court must consider "'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'"  Id. (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)).  If the language of a statute is clear and unambiguous, a court's inquiry is generally at an end.  United Kingdom Ministry of Defence v. Trimble Navigation Ltd., 422 F.3d 165, 171 (4th Cir. 2005); see United States Dep't of Labor v. North Carolina Growers Ass'n, 377 F.3d 345, 350 (4th Cir. 2004) (explaining that when the language of a statute is plain, a court should enforce it according to its terms, unless the disposition required by the statute's text

---

[4]As of March 1, 2003, INS ceased to exist and its responsibilities related to applications for naturalization were transferred to CIS.  See 6 U.S.C. § 271(b)(2).  From this point forward, the court will not distinguish between the two entities, except where it is important, or helpful to the reader, for the court to do so.

will produce an absurd result).

If the language of a statute is not clear, this court must next consider the regulations promulgated by an administrative agency that is charged with administering the statute.   See Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 548 (4th Cir. 2006).   The court must defer to an interpretation of the statute set forth in any such regulations as long as the interpretation reflects "a reasonable construction of the statute." United States v. Deaton, 332 F.3d 698, 709 (4th Cir. 2003).[5]   Also, a court generally must defer to an agency's interpretation of its own regulation if the regulation is ambiguous.   Christensen v. Harris County, 529 U.S. 576, 588 (2000); see Auer v. Robbins, 519 U.S. 452, 461 (1997) (explaining that the Secretary of Labor's interpretation of the Secretary's own regulations is controlling unless plainly erroneous or inconsistent with the regulation). Finally, where the language of a statute is ambiguous, a court may "consult its legislative history as a guide to congressional intent." Yi v. Fed. Bureau of Prisons, 412 F.3d 526, 533 (4th Cir. 2005).

In this case, the statute in question does not define the term

_____

[5]A court need not defer to an interpretation of a statute set forth by an agency in formats that lack the force of law, such as enforcement guidelines.   Christensen v. Harris County, 529 U.S. 576, 587 (2000).   Any such interpretations are merely "'entitled to respect'" to the extent they have the "'power to persuade.'"   Id. (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

"examination."   Pursuant to 8 U.S.C. § 1443(a), the Attorney General is authorized "to prescribe the scope and nature of the examination of applicants for naturalization as to their admissibility to citizenship."   The examination is "limited to inquiry concerning the applicant's residence, physical presence in the United States, good moral character, understanding of and attachment to the fundamental principles of the Constitution of the United States, ability to read, write, and speak English, and other qualifications to become a naturalized citizen as required by law, and shall be uniform throughout the United States."   8 U.S.C. § 1443(a).  Admittedly, when this statutory provision is viewed in isolation, it is not clear whether Congress used the term "examination" to refer to the initial interview of an applicant by CIS or to a process that includes both the initial interview and the mandatory background checks.

Section 1446, however, describes both the "investigation of applicants" and the "examination of applications."   8 U.S.C. § 1446.   Section 1446(a) provides that before a person may be naturalized, an employee of CIS, or an employee of the United States designated by the Attorney General, must "conduct a personal investigation of the person applying for naturalization in the vicinity or vicinities in which such person has maintained his actual place of abode and in the vicinity or vicinities in which such person has been employed or has engaged in business or work

for at least five years immediately preceding the filing of his application for naturalization."   Section 1446(b), in turn, provides that the Attorney General shall designate employees of CIS "to conduct examinations upon applications for naturalization."  It further provides that for such purposes, an "employee so designated is authorized to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization, to administer oaths, including the oath of the applicant for naturalization, and to require by subpena the attendance and testimony of witnesses, including applicant, before such employee so designated and the production of relevant books, papers, and documents."  8 U.S.C. § 1446(b).

Section 1446 thus indicates that the investigation and the examination are distinct steps in the application process.  Unlike the examination, the investigation may be conducted by either an employee of CIS or an employee of the United States designated by the Attorney General.   See id. § 1446(a), (b).   Moreover, the references to the attendance and testimony of witnesses and the production of documents indicate that the "examination" is the initial interview of the applicant by CIS.  This interpretation of the term "examination" is reinforced by the language of § 1447(b) itself, which refers to "the date on which the examination is conducted."   Unlike the initial interview of an applicant, a process that includes both the initial interview and a three-part

background investigation cannot be conducted on a particular date. See supra note 2. Thus, the plain language of the statute is clear, and indicates that the term "examination" refers to the initial interview of an applicant by CIS.

Although the court need not look beyond the language of the statute in this case, the court notes that interpreting the term "examination" to mean the initial interview of an applicant by CIS is consistent with the administrative regulations and the legislative history. For example, one of the regulations promulgated by INS, CIS's predecessor, provides as follows:

> Before an applicant may request a postponement of the second examination to a date that is more than 90 days after the initial examination, the applicant must agree in writing to waive the requirement [under § 1447(b)] that [CIS] must render a determination on the application within 120 days from the initial interview, and instead to permit [CIS] to render a decision within 120 days from the second interview.

8 C.F.R. § 312.5(b) (2006) (emphasis added). Not only does this regulation use the terms "examination" and "interview" interchangeably, but it also explicitly interprets § 1447(b) as requiring CIS to make a decision within 120 days of the initial interview. In addition, another regulation describes the examination of an applicant as follows:

> Subsequent to the filing of an application for naturalization, each applicant shall appear in person before a [CIS] officer designated to conduct examinations pursuant to § 332.1 of this chapter. The examination shall be uniform throughout the United States and shall encompass all factors relating to the applicant's eligibility for naturalization. The applicant may

12

> request <u>the</u> <u>presence</u> of an attorney or representative who
> has filed an appearance in accordance with part 292 of
> this chapter.

8 C.F.R. § 335.2(a) (emphasis added).  It further provides that CIS

"will notify applicants for naturalization to appear before [an

officer of CIS] for initial examination on the naturalization

application only after [CIS] has received a definitive response

from the Federal Bureau of Investigation that a full criminal

background check of an applicant has been completed."  8 C.F.R.

§ 335.2(b).  Finally, another regulation states that "[a] decision

to grant or deny the application shall be made at the time of the

initial examination or within 120-days after <u>the</u> <u>date</u> of the

initial examination of the applicant for naturalization under

§ 335.2."  8 C.F.R. § 335.3 (emphasis added).

        The language of these regulations, like the language of the

statute itself, is plain.   The regulations use the terms

"examination" and "interview" interchangeably, and interpret

§ 1447(b) as requiring CIS to make a decision on an application

within 120 days of the initial interview.  They further provide

that an applicant must appear in person at the examination, and may

request the presence of an attorney.  Additionally, CIS must not

schedule the examination, which takes place on a particular date,

until after the FBI completes a background investigation of the

applicant.   It is clear from the plain language of these

regulations that the term "examination" in 8 U.S.C. § 1447(b) means

the initial interview of an applicant by CIS.[6]

This interpretation of § 1447(b) finds additional support in the legislative history. Congress established the 120-day time limit when it enacted the Immigration Act of 1990 ("the Act"). See Immigration Act of 1990, Pub. L. 101-649, § 407, 104 Stat. 4978, 5044.[7] The Act is described in a committee report and a conference report, but neither report discusses the 120-day time limit. See H.R. Rep. No. 101-723(I), (II) (1990), as reprinted in 1990 U.S.C.C.A.N. 6710; H.R. Rep. No. 101-955 (1990), as reprinted in 1990 U.S.C.C.A.N. 6784 (Conf. Rep.). However, in 1989, the Committee on the Judiciary issued a report explaining the purpose of a proposed bill that would have amended § 1447(b) to include a 90-day time limit. See H.R. Rep. No. 101-187, at 34 (1989). The proposed bill would have amended § 1447(b) to read as follows:

> Where there has been a failure to make a determination under [§ 1446] before the end of the 90-day period after the date on which the examination is conducted under such section, the United States district court for the district in which the applicant resides shall upon the demand of the petitioner exercise exclusive jurisdiction over the matter.

Id. In its report, the Committee on the Judiciary explains that

---

[6]Because the language of the administrative regulations is clear, this court need not defer to CIS's interpretation of them. See Christensen, 529 U.S. at 588; Auer, 519 U.S. at 461.

[7]Since that time, Congress has not made any additional amendments of significance to § 1447(b). Compare id. (amending § 1447(b) in 1990 to incorporate the 120-day time limit), with 8 U.S.C. § 1447(b).

"the bill provides that the applicant may petition the court after 90 days of the <u>interview</u> on an application if a decision has not been made on the case." <u>Id.</u> at 14 (emphasis added).[8]  Thus, the term "examination" in the proposed bill referred to the interview of an applicant by CIS.  The language of the proposed amendment is virtually identical to the language selected by Congress when it established the 120-day time limit in 1990.  <u>Compare</u> <u>id.</u> at 34, <u>with</u> Immigration Act of 1990 § 407, 104 Stat. at 5044.  Accordingly, the Committee on the Judiciary's interpretation of the proposed amendment provides additional support for this court's interpretation of § 1447(b).  Like the plain language of the statute and the administrative regulations, the legislative history indicates that the term "examination" in § 1447(b) refers to the interview of an applicant by CIS, not a process that also includes the mandatory background checks.

**B.**

Having determined how to properly interpret § 1447(b), the court must next apply it to the facts of this case.  Because more than 120 days have passed since CIS interviewed Manzoor, this court has jurisdiction to consider his petition.  The court may, therefore, "either determine the matter or remand the matter, with appropriate instructions, to [CIS] to determine the matter."  8

---

[8]It further explains that "[i]t is expected that INS will move expeditiously after full investigation of the facts to calendar cases for examination and decision."  <u>Id.</u>

U.S.C. § 1447(b).  For the several reasons discussed below, the court deems the latter option to be preferable in this case.

First, the court is not equipped to conduct background checks of naturalization applicants.  In addition, the court recognizes that, in some cases, CIS may need to interpret the results of the background checks and conduct follow-up questioning of an applicant.  See supra note 2.  Just as the "name check" and "fingerprint check" are best left to the FBI, the review of the results of the mandatory background checks and any follow-up questioning of an applicant are best left to CIS.  See INS v. Orlando Ventura, 537 U.S. 12, 16-17 (2002) (explaining that "a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands").

Second, the court does not necessarily want to discourage CIS from continuing its practice of scheduling interviews prior to the completion of the FBI background checks.  Although it is clear that Congress intended the 120-day time period to run from the completion of the interview, the overriding concern of Congress was obviously to accelerate the application process, not impede it.  It may well benefit both CIS and naturalization applicants if CIS opts to get a head start on the application process by conducting an initial interview prior to the completion of the background checks.  This practice is prohibited by existing regulations, see 8 C.F.R. § 335.2(b), but these regulations presumably could be amended

through notice-and-comment rulemaking.[9]  Importantly, nothing in § 1447(b) mandates that CIS make a decision within 120 days of the initial interview.  Rather, when CIS fails to do so, § 1447(b) merely provides a district court with jurisdiction to determine the matter or remand the matter back to CIS.  In light of the fact that CIS lacks authority to grant an application for naturalization until the background checks are completed, see 8 U.S.C. § 1446(a),[10] it is readily apparent to the court that when CIS fails to make a timely decision on an application due to delays in the completion of the background checks, the appropriate remedy for that failure invariably will be simply to remand the matter back to CIS, and direct CIS to make a decision on the application within a

---

[9]The court notes that there is some indication in the legislative history that Congress intended CIS to wait until all background checks were completed before scheduling the initial interview.  See supra note 8.  This matter would likely need to be explored further before any regulations were amended.

[10]See also Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-119, Title I, 111 Stat. 2440, 2448-49 (1997) (explaining that "during fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated . . . to [CIS] shall be used to complete adjudication of an application for naturalization unless [CIS] has received confirmation from the [FBI] that a full criminal background check has been completed"); Fingerprinting Applicants and Petitioners for Immigration Benefits; Establishing a Fee for Fingerprinting by the Service; Requiring Completion of Criminal Background Checks Before Final Adjudication of Naturalization Applications, 63 Fed. Reg. 12,979, 12,981 (Mar. 17, 1998) (amending the administrative regulations to codify "[INS] policy that [INS] must receive confirmation from the Federal Bureau of Investigation (FBI) that a full criminal background check has been completed on applicants for naturalization before final adjudication of the application").

reasonable time after the background checks are completed.

Third, and finally, the court does not want to provide an incentive for naturalization applicants to file civil actions in an effort to expedite the naturalization process. Lawsuits such as this one divert CIS's attention and resources away from the adjudication of naturalization applications. Judicial intervention should thus be reserved for those rare circumstances in which CIS unnecessarily delays the adjudication of an application following the completion of all background checks. There is no indication that, in enacting § 1447(b), Congress intended to expedite the background investigation part of the application process. And the court has no desire to make the filing of a lawsuit a means for a naturalization applicant to "jump to the front of the line." For this reason, and the others discussed above, the court **REMANDS** this matter to CIS, and **DIRECTS** CIS to make a decision on Manzoor's naturalization application within 120 days of the date of this Memorandum Order.[11]

## C.

The result in this case is consistent with the results reached by the overwhelming majority of courts that have considered cases

---

[11]The court is allowing 120 days because the FBI name check for Manzoor has been completed, and it appears that the other two background checks require very little time to complete. See supra note 2. If the FBI had not yet completed the name check, the court would have instructed CIS to make its decision within 120 days of the completion of all background checks.

arising under analogous circumstances.  To some extent, the parties framed the issue in this case as a choice between the reasoning set forth by this court in Danilov v. Aguirre, 370 F. Supp. 2d 441 (E.D. Va. 2005), and the reasoning of various other district courts.  See, e.g., Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss at 12 n.10.  Courts have, in fact, reached conflicting conclusions as to whether the term "examination" in § 1447(b) refers to the initial interview of an applicant by CIS or the entire application process.  Compare Martinez v. Gonzales, No. 2:06-378, 2006 WL 3477985, at *3-4 (E.D. Va. Nov. 29, 2006) (holding that the interview is merely part of the examination, and dismissing the case for lack of subject matter jurisdiction), Damra v. Chertoff, No. 1:05-929, 2006 WL 1786246, at *3 (N.D. Ohio June 23, 2006) (same), and Danilov, 370 F. Supp. 2d at 445 (same), with Aslam v. Gonzales, No. C06-614, 2006 WL 3749905, at *1 (W.D. Wash. Dec. 19, 2006) (holding that the term "examination" in § 1447(b) refers to the initial interview of an applicant by CIS), Shalabi v. Gonzales, No. 4:06-866, 2006 WL 3032413, at *4 (E.D. Mo. Oct. 23, 2006) (same), Khelifa v. Chertoff, 433 F. Supp. 2d 836, 841-42 (E.D. Mich. 2006) (same), Daami v. Gonzales, No. 05-3667, 2006 WL 1457862, at *6 (D.N.J. May 22, 2006) (same), Al-Kudsi v. Gonzales, No. 05-1584, 2006 WL 752556, at *2 (D. Or. Mar. 22, 2006) (same), Essa v. United States Citizenship & Immigration Servs., No. 051449, 2005 WL 3440827, at *2 n.2 (D. Minn. Dec. 14, 2005) (same), and

19

El-Daour v. Chertoff, 417 F. Supp. 2d 679, 683 (W.D. Pa. 2005) (same).  Importantly, however, the vast majority of courts that have exercised jurisdiction over a case pursuant to § 1447(b) have remanded the matter back to CIS with appropriate instructions, rather than determine the matter.  See Shalabi, 2006 WL 3032413, at *6 (remanding to CIS "with instructions that [CIS] make a determination as expeditiously as possible after the completion of Shalabi's criminal background investigation"); Khelifa, 433 F. Supp. 2d at 842 (explaining that although the weight of authority interprets the term "examination" in § 1447(b) to refer to the interview conducted by CIS, "this same line of cases uniformly supports Defendants' contention that CIS generally should be given the opportunity to decide applications for naturalization in the first instance"); Daami, 2006 WL 1457862, at *6 (remanding to CIS "with instructions that it promptly adjudicate plaintiff's application upon receipt of the completed background check from the FBI"); El-Daour, 417 F. Supp. 2d at 684 (explaining that "I must remand the action to the CIS for a prompt resolution once the background check has been completed"); Essa, 2005 WL 3440827, at *3 (remanding to CIS "for prompt resolution").  But see Al-Kudsi, 2006 WL 752556, at *2-3 (holding a bench trial and then ordering the FBI to conduct a name check within ninety days); Aslam, 2006 WL 3749905, at *2 (holding a case in abeyance for sixty days to allow the FBI to complete a name check).

In summary, regardless of whether an action such as this one is dismissed for lack of subject matter jurisdiction or remanded to CIS, the bottom line is the same.  This court, like the overwhelming majority of courts, will not assume CIS's responsibilities related to the adjudication of a particular naturalization application merely because the FBI's investigation of the applicant has been delayed.

## IV.  Conclusion

For the reasons set forth above, Defendants' motion to dismiss is **DENIED**.  This matter is **REMANDED** to CIS, and CIS is **DIRECTED** to make a decision on Manzoor's application for naturalization within 120 days of the date of this Memorandum Opinion and Order.  The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to Manzoor and counsel for Defendants.

**IT IS SO ORDERED.**

_____          /s/
                                        Rebecca Beach Smith

Norfolk, Virginia

February 5, 2007

21